NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAGNER TECHNOLOGY, CORPORATION, et al., | : : : : |
| Plaintiffs, | : Civil Action No. 15-8185 (ES) |
| v. | : **MEMORANDUM OPINION** |
| TELEBRANDS CORPORATION, | : : |
| Defendant. | : : |

**SALAS, DISTRICT JUDGE**

### I. Background

This is a patent infringement action. Pending before the Court is a motion by Plaintiffs Ragner Technology Corporation ("Ragner") and Tristar Products, Inc. ("Tristar") (collectively, "Plaintiffs") to dismiss certain counterclaims of Defendant Telebrands Corporation ("Defendant" or "Telebrands").

Ragner and Tristar brought this action, alleging that Telebrands infringes U.S. Patent No. 7,549,448 (the "'448 patent"). (D.E. No. 1 ¶¶ 1, 44-49). This patent purportedly "discloses the fundamental technology underlying linearly retractable pressure hoses." (*Id.* ¶ 10). According to their complaint, Ragner owns the '448 patent and Tristar is an exclusive licensee of the '448 patent. (*Id.* ¶¶ 10, 11).

After this action was severed-in-part and transferred to this Court from the District of Delaware, (D.E. No. 21),[1] Telebrands answered and counterclaimed, (D.E. No. 28). In relevant part, Telebrands asserted counterclaims of "Tortious Interference with Telebrands' Contractual Relationships" (Count Three) and "Misuse of Judicial Process" (Count Four). (D.E. No. 28, Counterclaim ¶¶ 67-78).

According to its counterclaim allegations, Telebrands markets and sells "an expandable and contractible hose under the trademark POCKET HOSE." (*Id.* ¶ 16).[2] It "already has contractual agreements in place for the sale and distribution of the POCKET HOSE products, and reasonably expects to engage in additional such contractual agreements for its POCKET HOSE products." (*Id.* ¶ 17). The "POCKET HOSE products compete directly with Tristar's Flex-Able Hose product." (*Id.* ¶ 25).

For its tortious-interference counterclaim, Telebrands alleges, among other things, that it "has contractual relationships with certain customers of which Tristar is aware," and "Tristar intentionally and maliciously interfered with the contractual relationship by sending Telebrands' customer an improper notice regarding this lawsuit and improperly using litigation as a device for selling its own competing product." (*Id.* ¶¶ 68, 70; *see also id.* ¶ 29 ("Citing the present action, Tristar sent a notice to at least one of Telebrands' customers for the POCKET HOSE products regarding this lawsuit.")). "[A]s a result of the sending of the improper notice[,] at least one customer has been coerced into buying Tristar's expandable and contractible Flex-Able Hose product at the expense of pre-existing contracts to buy POCKET HOSE products from Telebrands." (*Id.* ¶ 71).

---

[1] Plaintiffs sued Telebrands, True Value Company ("True Value), and Scott True Value Hardware, Inc. ("Scott True Value")—but the District of Delaware severed and stayed the action against True Value and Scott True Value and transferred the action against Telebrands to this District pursuant to 28 U.S.C. § 1404(a). (*See* D.E. No. 21).

[2] The Court must accept Defendant's counterclaim factual allegations as true for purposes of resolving Plaintiffs' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

For its misuse-of-judicial-process counterclaim, Telebrands alleges, among other things, that Ragner and Tristar knowingly and willfully misused the judicial system—"not to protect any purported patent rights by seeking legal or equitable relief"—but to "gain market share advantage by improperly coercing customers to purchase Tristar's Flex-Able Hose product." (*Id.* ¶ 76). Telebrands alleges that "Ragner's and Tristar's resort to legal process was neither warranted nor authorized by law." (*Id.*).

Ragner and Tristar move to dismiss—under Federal Rule of Civil Procedure 12(b)(6)—these two counterclaims. (D.E. No. 32). The Court has considered the submissions made in support of and in opposition to Plaintiffs' motion and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court GRANTS Plaintiffs' motion to dismiss *without prejudice*.

**II.     Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.[3]

### III. Discussion

#### A. Count Three ("Tortious Interference with Telebrands' Contractual Relationships") must be dismissed

Plaintiffs argue that "the Counterclaim leaves the contours of the allegations vague as to the third-party contract that Tristar is allegedly aware of between Telebrands and the undisclosed third-party, the content of the notice or notices that improperly coerced a breach, and how the undisclosed third-party breached its contract with Telebrands." (D.E. No. 32-1 ("Pls. Mov. Br.") at 5). To be sure, Plaintiffs argue that—in relation to identifying the third party with whom Tristar allegedly interfered—"the allegations are vague because Telebrands referred to multiple customers in allegations 27, 31, and 32 and multiple contracts in allegations 69 and 72 while only alleging interference in allegation 70 with one contract and one customer." (D.E. No. 39 ("Pls. Reply Br.") at 4-5). Finally, Plaintiffs aver that some improper behavior must be alleged,

---

[3] Although this is a patent case, resolving a "Rule 12(b)(6) motion . . . is a purely procedural question not pertaining to patent law, to which [the Court of Appeals for the Federal Circuit] applies the rule of the regional . . . circuit." *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000).

but that Telebrands only points to Plaintiffs' lawsuit against True Value and Scott True Value—which was permitted by 35 U.S.C. § 271(a)—and, further, that Telebrands "fails to allege the contents of the notice or why such notice was improper." (*Id.* at 6-7).

In opposition, Telebrands argues that it adequately pleads its claim "based at least on the factual allegations relating to Plaintiffs' interference with Telebrands' contractual relationships with its retail customers, True Value and Scott True Value, by improperly bringing claims against them in this lawsuit and dragging them into the litigation between Telebrands and Plaintiffs." (D.E. No. 36 ("Def. Opp. Br.") at 2 (alterations omitted)). It contends that, "[a]s a result of Plaintiffs' interference, Telebrands' contractual relationships with at least these customers have been affected, including through loss of sales and Tristar's coercive actions to divert sales from Telebrands." (*Id.*).

Telebrands maintains that its "allegations form a sufficient basis for Telebrands' claim that Plaintiffs interfered with contractual relationships between Telebrands and its customers" and its allegations "support the conclusion that Plaintiffs brought suit against Telebrands' customers to induce them not to distribute and sell Telebrands' POCKET HOSE product and to sell Tristar's competing product instead." (*Id.* at 3). It cites, for example, its allegation that Plaintiffs' suit "naming Telebrands' customers as defendants served no purpose other than to delay the progress of the action, increase the cost of litigation to Telebrands, and harass Telebrands and its customers." (*Id.* at 3 (quoting D.E. No. 28, Counterclaim ¶ 32)). Finally, Telebrands avers that—although the "details" about the alleged improper notice "will be further expounded upon in this proceeding and during discovery"—the "sufficiency of the details concerning Tristar's improper notice to Telebrands' customer is not determinative of the adequacy of pleading the contractual interference claim." (*Id.* at 4).

"To establish a claim of tortious interference with a contract a plaintiff must demonstrate that the defendant 'intentionally and improperly interfere[d] with the performance of a contract . . . between [the plaintiff] and a third person by inducing or otherwise causing the third person not to perform the contract.'" *Samsung Elecs. Am., Inc. v. Westpark Elecs., LLC*, No. A-3777-14T3, 2015 WL 7783607, at *1 (N.J. Super. Ct. App. Div. Dec. 4, 2015) (per curiam) (alterations in original) (quoting *Nostrame v. Santiago*, 61 A.3d 893, 901 (N.J. 2013)).  More particularly, a "claim for tortious interference with contractual relationship requires '(1) the existence of the contract[;] (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages.'" *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010) (quoting *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997)).

The "term 'malice' as used in a tortious interference claim under New Jersey law 'is not used in the literal sense requiring ill will toward the plaintiff, but instead malice is defined to mean that the harm was inflicted intentionally and without justification or excuse.'" *Grande Village LLC v. CIBC Inc.*, No. 14-3495, 2015 WL 1004236, at *8 (D.N.J. Mar. 6, 2015) (quoting *Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds*, 833 A.2d 633, 637-38 (N.J. Super. Ct. App. Div. 2003)).  Although the New Jersey Supreme Court did not use the term "malice" in connection with "defining the elements of tortious interference with an existing contract," *Nostrame*, 61 A.3d at 901, this Court addresses this element by interpreting it as "improper." *Cf. Grande Village*, 2015 WL 1004236, at *8 n.2 ("Although the word 'malice' is not used in the standard recently articulated by the New Jersey Supreme Court ('improperly' is used instead), it is used in the case law and both parties present arguments based on malice.

Therefore, the Court will address it as such but as explained *infra*, interprets the term malice as more akin to 'improper' than 'malicious.'").

The parties do not dispute that New Jersey law applies and that a claim of tortious interference with a contract requires, among other things, improper interference with the performance of a contract. (*See* Def. Opp. Br. at 2; Pls. Reply Br. at 4).

Telebrands appears to argue that the impropriety element of its tortious interference claim is satisfied by alleging that Plaintiffs "improperly" brought claims against True Value and Scott True Value "and dragg[ed] them into the litigation between Telebrands and Plaintiffs." (Def. Opp. Br. at 2 (alterations omitted)). Indeed, Telebrands alleges that "Tristar intentionally and maliciously interfered with the contractual relationship by sending Telebrands' customer an *improper notice* regarding this lawsuit and *improperly using litigation* as a device for selling its own competing product." (D.E. No. 28, Counterclaim ¶ 70 (emphases added); *see also id.* ¶ 31 ("Ragner and Tristar included Telebrands' customers for the POCKET HOSE products as defendants in this action in an improper attempt to keep the action in the District of Delaware and to prevent transfer to the District of New Jersey.")).

But a patentee may bring suit under 35 U.S.C. § 271(a) against "whoever without authority makes, uses, offers to sell, or sells any patented invention." And in their complaint, Plaintiffs alleged, for example, that "True Value and Scott True Value sell Telebrands' Pocket Hoses with promotional packaging and instructions that intentionally induce purchasers to use the Telebrands Pocket Hoses to infringe the method claims of the '448 patent." (D.E. No. 1 ¶ 41). Drawing on experience and common sense, the Court finds that the counterclaim allegations—which Telebrands claims support its tortious-interference claim—amount to

allegations that "stop[] short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Further, the Court is not satisfied that Telebrands' allegation of "an improper notice regarding this lawsuit," (D.E. No. 28, Counterclaim ¶ 70), saves its claim. Although Telebrands argues that the law "does not require further details regarding the improper notice for purposes of pleading Telebrands' claim," (Def. Opp. Br. at 4), merely labeling the alleged notice as "improper" amounts to a conclusory allegation that is not entitled to the assumption of the truth. *See Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563.

In sum, without factual allegations supporting the impropriety of Plaintiffs' conduct, this claim must be dismissed.[4]

### B. Count Four ("Misuse of Judicial Process") must be dismissed

Plaintiffs contend that "misuse of judicial process" is not recognized by New Jersey courts. (Pls. Mov. Br. at 7). They posit that, if anything, courts recognize claims of "malicious abuse of process" and "malicious use of process." (*Id.*). Plaintiffs contend that, even if the Court agrees with Telebrands that the name of its claim is not controlling, "the pleadings remain inadequate because they fail to provide Ragner and Tristar with enough information to ascertain the precise claim." (Pls. Reply Br. at 7-8). Plaintiffs aver that, even "after reading Telebrands' Opposition, it is still far from clear exactly what Telebrands is attempting to allege, since it cannot provide factual support for <u>any</u> of the causes of action which could fall under the 'Misuse of Judicial Process' cause of action." (*Id.* at 8 n.5).

---

[4] For this reason, the Court need not reach Plaintiffs' contention that "the allegations are vague" as to the third party at issue. (*See* Pls. Reply Br. at 5). In any event, Telebrands has alleged that its customers are True Value and Scott True Value and that "Telebrands has contractual relationships with certain customers of which Tristar is aware." (D.E. No. 28, Counterclaim ¶¶ 27, 31, 32, 68). The Court must give Telebrands the "benefit of every favorable inference" in this regard. *See Malleus*, 641 F.3d at 563 (citation and quotation marks omitted).

Telebrands maintains, however, that "Plaintiffs have baselessly brought suit against Telebrands and its customers." (Def. Opp. Br. at 6). Telebrands argues that its "abuse of process claim is founded on more than the factual allegation of Plaintiffs' improper notice of the litigation to one of Telebrands' customers," but "that Plaintiffs' case is baseless, and was brought without probable cause and motivated by malice." (*Id.*). Telebrands contends that, "under this Court's precedent, a counterclaim for malicious use of process should not be dismissed if based on a concomitant baseless patent infringement claim that will also be decided by the Court." (*Id.* at 7 (citing *Artemi Ltd. v. Safe-Strap Co.*, No. 03-3382, 2013 WL 6860734, at *5 (D.N.J. Dec. 30, 2013))).

To reiterate, the title of Telebrands' cause of action is "Misuse of Judicial Process." (D.E. No. 28 at 20). In its opposition to Plaintiffs' motion, Telebrands asserts in no uncertain terms that it "has adequately pled a cause of action that Plaintiffs would label 'Malicious Use of Process.'" (Def. Opp. Br. at 5). But, in its opposition, Telebrands then characterizes its claim as an "abuse of process claim." (*Id.* at 6). And, later in its brief, it discusses case law concerning a claim "for malicious use of process." (*Id.* at 7).

This is not a distinction without a difference. Nor is this an issue of elevating form over substance. Rather, Telebrands seems to present argument about distinct causes of action under New Jersey law. *See Foundation Credit Funds, LLC v. Branch Banking & Trust Co.*, No. 06-0893, 2006 WL 3780677, at *1-2 (D.N.J. Dec. 21, 2006) (citing New Jersey case law and discussing elements for "a claim for malicious use of process" as compared with "a claim for malicious abuse of process"); *SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F.Supp. 1053, 1067 (D.N.J. 1989) ("The [plaintiff's] labeling of its claim as one for 'malicious abuse of

process' while citing case law which defines the tort of 'malicious use of process' ignores the distinction between these two causes of action under New Jersey law.").

Accordingly, it is unclear to the Court what cause of action Telebrands is attempting to save from dismissal. The Court therefore dismisses Count Four without prejudice. *Cf. RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-0077, 2013 WL 1338309, at *3 (D.N.J. Apr. 1, 2013) ("While, typically, a failure to satisfy Rule 8 occurs where few or only conclusory facts are pled, a complaint like Plaintiff's also fails to satisfy this basic rule. Clearly, Plaintiff's Complaint, standing alone, has failed to put Defendants on notice of the basis of all of the claims against them. . . . [N]either the Court nor Defendants should be required to guess which particular claims are being asserted and/or to sift through a tome of allegations to piece together those claims.").[5]

## IV.  Conclusion

For the above reasons, the Court dismisses Defendant's counterclaims of "Tortious Interference with Telebrands' Contractual Relationships" (Count Three) and "Misuse of Judicial Process" (Count Four). The Court will grant Telebrands' request to file an amended complaint. (Def. Opp. Br. at 8 n.2); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."). An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[5] The Court declines to reach Plaintiffs' arguments as to how Defendant's allegations support neither a claim for "abuse of process" nor a claim for "malicious use of process." Plaintiffs are, of course, free to renew such arguments in any future motion practice.