**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAGNER TECHNOLOGY CORP. and TRISTAR PRODUCTS INC., <br><br> Plaintiffs, <br><br> v. <br><br> TELEBRANDS CORP. and BULBHEAD.COM, LLC, <br><br> Defendants. | Civil Action No. 15-8185 (ES) (MAH) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court are motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) by all parties. (*See* D.E. Nos 113, 116 & 120). Defendant Telebrands Corporation ("Telebrands") moves to dismiss Counts V to VIII of Plaintiffs Ragner Technology Corporation ("Ragner") and Tristar Products Inc.'s ("Tristar") (collectively, "Plaintiffs") Amended Complaint (D.E. No. 106, ("Am. Compl.")). (D.E. No. 113). Defendant Bulbhead.com, LLC ("Bulbhead") moves to dismiss all claims asserted against it in the Amended Complaint. (D.E. No. 120). And Plaintiffs move to dismiss Count XI of Telebrands' counterclaims. (D.E. No. 116).

The Court has considered the parties' submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court DENIES Telebrands's motion, DENIES Bulbhead's motion, and GRANTS Plaintiffs' motion.

**I.  Background**

The dispute between these parties spans multiple lawsuits, multiple jurisdictions, and even multiple countries. *See, e.g.*, *Telebrands Corp. v. Ragner Tech. Corp.*, No. 15-3163 (D.N.J.);

*Tinnus v. Telebrands Corp.*, No. 15-0551 (E.D. Tex.); *E. Mishan & Sons, Inc.* v. *Superlek Canada Inc.*, 2014 FC 326 (Can. Fed. Ct. 2014). The facts are convoluted and the procedural history lengthy. Because the Court writes primarily for the parties, the Court provides only a very abbreviated version of the facts and procedural history.[1]

Ragner owns U.S. Patent Nos. 7,549,448 ("the '448 patent"); 9,022,076 ("the '076 patent"); 9,182,057 ("the '057 patent"); and 9,371,944 ("the '944 patent") (collectively, "the patents-in-suit"), all of which relate to expandable hose technology. (Am. Compl. ¶ 1, Exs. A, B, C & D). Tristar is the exclusive licensee of the patents-in-suit. (Am. Compl. ¶ 1). Under the brand name "FLEX-ABLE HOSE," Tristar sells expandable hoses embodying the technology of the patents-in-suit. (*See id.* ¶ 12).

Telebrands is a direct response marketing company that sells consumer products. (D.E. No. 114, ("Counterclaims") ¶ 28). Relevant here, Telebrands sells expandable hoses under the brand "POCKET HOSE," and is the exclusive licensee of a patent directed to expandable hose technology, U.S. Patent No. 8,291,941 ("the '941 patent"). (*Id.* ¶¶ 13 & 30). Bulbhead is alleged to be affiliated with Telebrands, affiliated with the website www.bulbhead.com, and under common control with Telebrands. (Am. Compl. ¶¶ 15 & 17).

On July 6, 2018, Plaintiffs filed the Amended Complaint. (*See generally id.*). Plaintiffs bring patent infringement claims (Counts I to IV) against Telebrands and Bulbhead for each of the patents-in-suit. (*Id.* ¶¶ 56-91). Plaintiffs also bring four claims (Counts V to VIII) based on unfair competition laws. (*Id.* ¶¶ 92-127).

In the Amended Complaint, Plaintiffs allege that Telebrands and Bulbhead promulgated a

---

[1] The Court must accept the opposing parties' factual allegations as true for purposes of resolving these motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

series of video advertisements that falsely and misleadingly touted the strength of POCKET HOSE products. (*Id.* ¶¶ 48 & 49). For example, Plaintiffs allege that one video falsely and misleadingly stated that the POCKET HOSE product was "strong enough to pull this 5,000 pound SUV," while another falsely and misleadingly stated that the product was "tough enough to tow a truck." (*Id.*). Plaintiffs aver that they were injured by these advertisements through lost sales, through lost goodwill and reputation, and through the resulting general disbelief in the novel and utility of expandable hoses. (*Id.* ¶ 50). From these factual allegations, Plaintiffs bring a Lanham Act claim (Count V), a claim under N.J. Stat. Ann. § 56:4-1 *et seq.* (Count VI), and a New Jersey common law unfair competition claim (Count VIII)—all under a false advertising theory. (*Id.* ¶¶ 92-108 & 118-27).

Plaintiffs also allege that Telebrands improperly obtained a Ragner prototype from a third party, and then used that prototype to develop the POCKET HOSE products. (*Id.* ¶¶ 44, 113 & 124). Plaintiffs aver that they were injured by these acts through loss of sales, loss of goodwill and reputation, and resulting disbelief in the novel and utility of expandable hoses generally. (*Id.* ¶ 115). From this set of facts, Plaintiffs bring a claim for tortious interference with business advantage (Count VII) and an additional legal theory under their New Jersey common law claim for unfair competition (Count VIII). (*Id.* ¶¶ 109-27).

In their counterclaims, Telebrands seeks declaratory judgment that the patents-in-suit are invalid and that Telebrands has not infringed any of them (Counts I to IV & VI to X). (Counterclaims ¶¶ 127-48 & 166-205). With respect to the '076 and '944 patents, Telebrands also seeks declaratory judgment that the patents are unenforceable due to inequitable conduct during prosecution (Count V). (*Id.* ¶¶ 149-65). Specifically, Telebrands alleges that inventors Gary Dean Ragner and Robert Daniel deRochement, Jr., and the law firm Frost Brown, breached their duty of

candor and good faith by not disclosing that multiple claims had been copied from the '941 patent exclusively licensed to Telebrands. (*Id.* ¶¶ 13, 71, 75, 82, & 96). Telebrands also brings a "misappropriation of intellectual property" counterclaim (Count XI) that appears to be based on the same facts. (*See id.* ¶¶ 206-18).

In its motion, Telebrands moves to dismiss the four claims Plaintiffs assert based on unfair competition laws (Counts V to VIII). (D.E. No. 113-1). Bulbhead in its motion moves to dismiss all claims asserted against it. (D.E. No. 120-1). And Plaintiffs move in their motion to dismiss Telebrands's counterclaim for misappropriation of intellectual property (Count XI). (D.E. No. 116-1).

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the burden is on the moving party to show that the plaintiff has not stated a facially plausible claim. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). Moreover, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But a court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.").

"[A] court must consider only the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (citations and internal quotation marks omitted)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." *Jeffrey Rapaport M.D., P.A. v. Robins S. Weingast & Assocs. Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

### III. Discussion

#### A. Telebrands's Motion to Dismiss Counts V to VIII of the Amended Complaint

Telebrands moves to dismiss Plaintiffs' false advertising claim under the Lanham Act (Count V), unfair competition claim under N.J. Stat. Ann. § 56:4-1 *et seq.* (Count VI), claim for tortious interference with prospective business advantage (Count VII), and claim for common law unfair competition (Count VIII). (D.E. No. 113-1).

##### i. *Plaintiffs' false advertising claim under the Lanham Act*

A plaintiff must allege five elements to state a false advertising claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B):

> 1) . . . the defendant has made false or misleading statements as to his own product [or another's]; 2) . . . there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) . . . the deception is material in that it is likely to influence purchasing decisions; 4) . . . the advertised goods traveled in interstate commerce; and 5) . . . there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Group SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (quoting *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F3d. 241, 248 (3d Cir. 2011)). Regarding the first element, a plaintiff must show "that the advertisement 'is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers.'" *Id.* (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)); *see also Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) ("[A] plaintiff must prove *either* literal falsity *or* consumer confusion, but not both.").

Determining whether a message in an advertisement is literally false requires a contextual analysis. *Group SEB USA*, 774 F.3d at 198. A court first determines whether a message is unambiguous. *Id.* Only if a court finds a message unambiguous does it turn to the question of whether the statement is false. *Id.* A literally false message may be either explicit, or necessarily implicated by the advertisement as a whole. *Id.* "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion . . . the less likely it is that a finding of literal falsity will be supported." *Id.* at 198-99 (internal quotation marks omitted).

If a message is literally *true* or ambiguous, a plaintiff must show actual deception or a tendency to deceive, such as with consumer survey evidence. *See Pernod Ricard USA*, 653 F.3d at 248. Finally, puffery, i.e. "an exaggeration or overstatement expressed in broad, vague, and commendatory language," is not actionable under Section 43(a) of the Lanham Act. *Castrol*, 987 F.2d at 945; *see also* W. Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 109, at 756-57 (5th ed. 1984) ("Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer. . . . The 'puffing' rule amounts to a seller's privilege to lie his head off, so long

as he says nothing specific.").

Here, Telebrands challenges the sufficiency of Plaintiffs' pleading of the first and third elements. (*See* D.E. No. 113-1 at 6-8). Regarding the first element, Telebrands argues that "Plaintiffs do not assert . . . that the video advertisements relating to the strength of POCKET HOSE products are literally false . . . . [or] that these video advertisements are misleading, i.e., literally true but tending to deceive." (*Id.* at 6-7). Telebrands argues that the advertisements' statements "[i]t's strong enough to pull this 5,000 pound SUV" and "[i]t's tough enough to tow a truck" only communicate a message that the hoses could pull the vehicles shown in the advertisements—not that the hoses could pull a vehicle generally. (*Id.* at 7). Telebrands therefore contends that there is no plausible factual basis for concluding that the advertisements are false or misleading. (*Id.*). As to the third element, Telebrands contends that the statements-at-issue "are a form of non-actionable puffery to tout the high strength of the POCKET HOSE products and [are] not directed to the hose's qualities to function as a hose (other than its strength generally) . . . ." (*Id.*). Telebrands argues that Plaintiffs' have not adequately pleaded materiality, as "[i]t is implausible that any customer is being induced to purchase the POCKET HOSE products to pull their vehicles." (*Id.*).

The Court holds that Telebrands has not met its burden of showing that Plaintiffs have failed to state a facially plausible, false advertising claim. *See Davis*, 824 F.3d at 349. First, contrary to Telebrands's assertion, and as Plaintiffs correctly point out, the Amended Complaint *does* allege that the statements-at-issue are literally false or misleading. (*See* D.E. No. 115 at 7-8). Paragraph 93 states "Defendants have made and continue to make commercial advertising and promotional claims, including without limitation those described in paragraphs 48-49, *that are false and misleading* statements of fact . . . and that both deceive and have the capacity to deceive

a substantial segment of the relevant consumers and potential customers . . . ." (Am. Compl. ¶ 93 (emphasis added)). Paragraph 48 of the Amended Complaint identifies the video advertisements and lists the statements-at-issue. (*See id.* ¶ 48). Paragraph 49 of the Amended Complaint goes on to allege that "[e]ach of [the previous] statements is *unequivocally false*." (*See id.* ¶ 49 (emphasis added)). The Court does not see how Plaintiffs have failed to allege that the statements in the video advertisements are literally false or misleading.

Second, Plaintiffs have pleaded facts sufficient to demonstrate that Telebrands and Bulbhead have made false or misleading statements as to its POCKET HOSE products. For example, Plaintiffs allege that one of the video advertisements states the following regarding POCKET HOSE ULTRA: "[i]t's tough enough to tow a truck." (Am. Compl. ¶ 48). Plaintiffs allege that the statement is "unequivocally false"—i.e., that POCKET HOSE ULTRA is not tough or strong enough to tow a truck. (*See id.* ¶ 49). Plaintiffs then provide a link to a non-party video purportedly demonstrating the falsity of the statement. (*Id.*). These pleaded facts, accepted as true and read in a light favorable to Plaintiffs, lead to the reasonable inference that the statement in the video is unambiguous and false, or at least that it has a tendency to deceive. *See Group SEB USA*, 774 F.3d at 198-99; *Malleus*, 641 F.3d at 563.

Third, Plaintiffs have adequately pleaded the third element, materiality. For example, Plaintiffs allege that "[u]pon information and belief, [Telebrands and Bulbhead's] false and misleading advertisements led to increased sales of Pocket Hoses, to the detriment of Plaintiffs." (Am. Compl. ¶ 50). This pleaded fact, accepted as true and read in a light favorable to Plaintiffs, lead to the reasonable inference that the deception "is likely to influence purchasing decisions." *See Group SEB USA*, 774 F.3d at 198-99; *Malleus*, 641 F.3d at 563.

Telebrands's arguments otherwise on materiality are unpersuasive. Telebrands argues that

the advertisement videos are not material because "[i]t is implausible that any customer is being induced to purchase the POCKET HOSE products to pull their vehicles." (D.E. No. 113-1 at 7). But then Telebrands acknowledges that the video advertisements speak generally to the high strength of the products. (*Id.*). Plaintiffs likewise contend that the video advertisements speak to the high strength of POCKET HOSE products, albeit falsely. (D.E. No. 115 at 12). At the motion-to-dismiss stage, the Court cannot say that allegedly false advertisements touting a product's high strength would not influence purchase decisions. *See Group SEB USA*, 774 F.3d at 198-99; *Malleus*, 641 F.3d at 563.

Nor can the Court at this time conclude as a matter of law that the statements at issue are non-actionable puffery. (*See* D.E. No. 113-1 at 7). Telebrands provides no case law to support its puffery argument. (*See id.*). Plaintiffs, on the other hand, provide a line of case law indicating that statements directed to specific, measurable product attributes are not puffery. (*See* D.E. No. 115 at 12-13); *see, e.g.*, *Castrol*, 987 F.2d at 946 (rejecting argument that the defendant's claim of engine protection was puffery where "the claim [was] both specific and measurable by comparative research" and citing to a line of cases holding similarly). Telebrands claims appear specific (e.g., "[i]t's strong enough to pull this 5,000 pound SUV") and directed to a product attribute that the Court at this stage can only assume is measurable (i.e., strength).

Finally, "[g]iven the fact-intensive issues presented by these statements—i.e., are the statements false or misleading (as opposed to nonactionable puffing), and did they deceive and influence purchasing decisions?—the Court finds that it is not proper to formally resolve these issues at the motion-to-dismiss stage." *See Horizon Healthcare Servs., Inc. v. Valley Health Sys.*, No. 16-0545, 2016 WL 4770032, at *5 (D.N.J. Sept. 12, 2016); *see also D'Agostino v. Appliances Buy Phone, Inc.*, 633 F. App'x 88, 94 (3d Cir. 2015) (holding that determining when a copyright

claim accrued "require[d] a resolution of factual issues that is inappropriate on a motion to dismiss"). The Court therefore will not delve into each statement from the advertisements to determine whether each actually violates the Lanham Act. The Court simply "finds that the pleadings sufficiently demonstrate a plausible claim to relief such that they are 'entitled to offer evidence to support the claims,'" and that Telebrands has not met its burden of demonstrating otherwise. *See Horizon Healthcare*, 2016 WL 4770032, at *5 (quoting *United States ex rel. Wilkins*, 659 F.3d 295, 302 (3d Cir. 2011)); *Davis*, 824 F.3d at 349; (*see also* Am. Compl. ¶¶ 20, 47-51, 54 & 93). Telebrands's motion to dismiss Count V is denied.

> ii. ***Plaintiffs' unfair competition claims under N.J. Stat. Ann. § 56:4-1* et seq. *and New Jersey common law***

New Jersey statutory and common-law unfair competition claims mirror claims under Section 43(a) of the Lanham Act. *See NY Machinery Inc. v. Korean Cleaners Monthly*, No. 17-12269, 2018 WL 2455926, at *4 (D.N.J. May 31, 2018); *see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994) ("We previously have held that the 'federal law of unfair competition under § 43(a) is not significantly different from the New Jersey [common] law of unfair competition' and have applied the identical test to both claims."). For the same reasons the Court denies Telebrands's motion to dismiss Count V, the Court denies Telebrands's motion to dismiss Counts VI and VIII of the Amended Complaint. *See NY Machinery*, 2018 WL 2455926, at *4.

> iii. *Plaintiffs' claim for tortious interference with prospective business advantage*

To state a claim for tortious interference with prospective business advantage under New Jersey law, a plaintiff must allege "[1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [defendant's] malicious interference, and [3] that it suffered losses thereby." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (citations

omitted) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 932 (N.J. Super. Ct. App. Div. 1995)). This cause of action "protects the right 'to pursue one's business, calling or occupation free from undue influence or molestation.'" *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 36 (N.J. 1989) (quoting *Louis Kamm, Inc. v. Flink*, 175 A. 62, 66 (N.J. 1934)). "What is actionable is the luring away, by devious, improper and unrighteous means, of the customer of another." *Avaya*, 838 F.3d at 382 (cleaned up).

The Court finds that Plaintiffs have sufficiently pleaded a claim for intentional interference with prospective business advantage. Plaintiffs allege that Ragner had developed a prototype that embodies the invention disclosed and claimed in the '448 Patent. (*See* Am. Compl. ¶ 44). Plaintiffs allege that "Tristar sells [the patented] hoses under the brand name 'FLEX-ABLE HOSE'" and that through this invention they have "a protected interest in their prospective business advantage with their prospective customers." (*Id.* ¶¶ 12 & 110). Plaintiffs' allegation that they had conceived and reduced to practice a patentable invention is an "allegation[] of fact giving rise to some 'reasonable expectation of economic advantage.'" *Printing Mart*, 563 A.2d at 37 (quoting *Harris v. Perl*, 197 A.2d 359, 363 (N.J. 1964)). And Plaintiffs' allegation that Tristar was selling the invention "demonstrate[s] that [they] w[ere] in 'pursuit' of business." *Id.* This is enough to satisfy the first prong.

As to the second prong, Plaintiffs allege that "Telebrands improperly, and without Ragner Corp.'s consent, obtained Ragner Corp.'s . . . prototype . . . from a third party who was under an obligation not to disclose it" and that Telebrands developed and sold its own product based on the improperly obtained prototype. (Am. Compl. ¶¶ 44 & 45). Plaintiffs also allege that Telebrands' CEO stated that Telebrands "created Pocket Hose by adapting the idea of an earlier product by" Plaintiffs. (*See id.* ¶¶ 2, 16 & 45). Taking another company's prototype and developing and selling

one's own product from it "would not be sanctioned by 'the rules of the game'" and is wrongful conduct. *See Avaya*, 838 F.3d at 383 (quoting *Printing Mart*, 563 A.2d at 40); *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1172 (N.J. 2001) (The "taking of plaintiff's confidential and proprietary property and then using it effectively to target plaintiff['s] clients, is contrary to the notion of free competition that is fair."). Plaintiffs have adequately pleaded "the intentional doing of a wrongful act without justification or excuse." *See Avaya*, 838 F.3d at 383 (quoting *Printing Mart*, 563 A.2d at 39).

Regarding the third element, loss and causation, Plaintiffs allege that they directly compete with Telebrands and Bulbhead "for sales of consumer expandable hoses and for wholesale customers that sell consumer expandable hoses to their customers." (Am. Compl. ¶ 42). Plaintiffs also allege that "[a]s a result of [Telebrands and Bulbhead's] copying of Plaintiffs' product," Telebrands and Bulbhead have "captur[ed] major wholesale customers and caus[ed] Tristar to lose sales of its hoses to those major wholesale customers." (*Id.* ¶ 46). These allegations are enough to support a finding that, but for Telebrands and Bulbhead's alleged tortious interference, Plaintiffs would have consummated sales to wholesale customers and made a profit. *See Avaya*, 838 F.3d at 383.

The Court is not persuaded by Telebrands's arguments that Plaintiffs have not stated a viable claim for tortious interference with prospective business advantage. (*See* D.E. No. 113-1 at 9-12). Telebrands argues that Plaintiffs' failure to identify a specific, interfered-with transaction is fatal to their claim. (*Id.* at 10-11). This argument is meritless. "Courts have found 'a reasonable expectation of economic gain in as slight an interest as prospective public sales.'" *Avaya*, 838 F.3d at 383 (quoting *Printing Mart*, 563 A.2d at 39 (collecting cases)). For the reasons the Court has explained above with respect to the second and third elements, Telebrands's argument that

Plaintiffs have not adequately pleaded malice or causation is also meritless. If anything constitutes the "luring away, by devious, improper and unrighteous means, of the customer of another," it is taking a confidential and proprietary prototype of another and selling your own version of it to their prospective customers. *See Avaya*, 838 F.3d at 382 (cleaned up). The Court denies Telebrands's motion to dismiss Count VII of the Amended Complaint.

For the foregoing reasons, the Court denies Telebrands's motion to dismiss in its entirety.

### B. Bulbhead's Motion to Dismiss

Bulbhead moves to dismiss all claims asserted against it in the Amended Complaint. (D.E. No. 120-1). Without a single legal citation and with little reference to the Amended Complaint, Bulbhead argues that "Plaintiffs have not sufficiently alleged that Bulbhead.com, LLC was engaged in any activity associated with the alleged infringement of Plaintiffs' patents or the business torts set forth in the First Amended Complaint." (*Id.* at 5-6). Bulbhead argues that Plaintiffs "do[] not allege that Bulbhead.com, LLC committed any act of infringement or any act in furtherance of a business tort other than through the Bulbhead website, which is operated by Telebrands." (*Id.* at 5). Bulbhead accuses Plaintiffs of purposefully obfuscating Bulbhead.com, LLC, the Bulbhead website, and the Bulbhead brand. (*Id.* at 6). In sum, Bulbhead argues that Plaintiffs have not shown a sufficient link between it (i.e., Bulbhead.com, LLC) and the Bulbhead website (i.e., www.bulbhead.com). (*See id.* at 5-6). In the alternative, Bulbhead incorporates by reference the arguments in Telebrands's motion to dismiss and argues that Counts V to VIII should be dismissed. (*Id.* at 6).

Plaintiffs contend that they have sufficiently pleaded Bulbhead's control over the Bulbhead website. (D.E. No. 125 at 4-6). Plaintiffs contend that Bulbhead admitted in another case that it owns www.bulbhead.com. (*Id.* at 6). Plaintiff also contends that United States Patent and

Trademark Office ("USPTO") records contradict Bulbhead's position. (*Id.* at 6-7).

The Court considers the connections between Telebrands, Bulbhead, the website www.bulbhead.com, and the Bulbhead brand, issues of fact inappropriate to resolve at the motion-to-dismiss stage. *See Horizon Healthcare*, 2016 WL 4770032, at *5; *D'Agostino*, 633 F. App'x at 94. The Court holds only that Plaintiffs have pleaded sufficient facts to link Bulbhead to alleged infringement and business torts in the Amended Complaint and survive a motion to dismiss. For example, Plaintiffs allege that Bulbhead is a business entity "affiliated with Telebrands, with Bulbhead being Telebrands's website, and Bulbhead (and, therefore, Telebrands) makes profits from selling Telebrands infringing Pocket Hoses via the Internet." (Am. Compl. ¶¶ 14-15). Plaintiffs further allege that "Telebrands and Bulbhead are under common control, with Mr. Khubani as the CEO and founder of" both businesses. (*Id.* ¶ 17). Plaintiffs aver that "upon information and belief, Telebrands has transferred and is transferring accounts from Telebrands to Bulbhead." (*Id.* ¶ 21). Finally, Plaintiffs generally do not distinguish between Telebrands and Bulbhead when asserting Plaintiffs' theories of liability. (*See id.* ¶¶ 56-127).

The Court rejects Bulbhead's alternative arguments for the same reasons stated above in denying Telebrands's motion. Bulbhead's motion to dismiss is denied.

### C. Plaintiffs' Motion to Dismiss Count XI of Telebrands' Counterclaims

Plaintiffs move to dismiss Telebrands's counterclaim for misappropriation of intellectual property (Count XI). (D.E. No. 116). Plaintiffs argue that neither New Jersey state courts nor federal courts applying New Jersey law recognize a cause of action for misappropriation of a patent. (*See* D.E. No. 116-1 at 3-4). Plaintiffs contend that Count XI simply repackages Telebrands's inequitable conduct counterclaim and is therefore preempted by federal patent law. (*Id.* at 4-6). Plaintiffs also contend that the factual allegations underlying Count XI do not align

with any other unfair competition theory under New Jersey law. (*See id.* at 6-10).

In opposition, Telebrands argues that misappropriation of intellectual property is a recognized cause of action under New Jersey's unfair competition case law. (D.E. No. 126 at 2-5). Telebrands also argues that its counterclaim is not preempted by patent law because the cause of action contains the additional element of direct competition. (*Id.* at 7-9).

Plaintiffs reply that Telebrands's opposition "lacks any discussion of the required elements of any recognized misappropriation claim under New Jersey law" and "does not address whether and how any alleged facts could be mapped to any requisite element. (D.E. No. 127 at 2). Plaintiffs contend that each of the cases Telebrands relies on is inapposite or distinguishable. (*See id.* at 3-9).

The Court finds Plaintiffs' arguments persuasive. As currently pleaded, the core factual allegations of Count XI appear to be the following: (i) counsel at the law firm Frost Brown copied claim language from the '941 patent exclusively licensed to Telebrands into patent applications that issued as the '076 and '944 patents; (ii) during prosecution, the inventors and Frost Brown did not disclose this conduct to the USPTO, in violation of their duty of candor; and (iii) because of this improper conduct, the '076 and '944 patents were obtained fraudulently. (*See* Counterclaims ¶¶ 13, 71, 75, 82, 96, 99-100 & 206-16). The counterclaim does not specify what intellectual property right was misappropriated, but it appears to be the '944 patent rights licensed to Telebrands. (*See generally id.*).

The Court is not aware of any New Jersey state court or federal court decision recognizing misappropriation of a patent, or the legal language contained in a patent claim, as a valid cause of action. And Telebrands does not provide a case. (*See generally* D.E. No. 126). Telebrands's reliance on *Rudolph v. Yari Film Group Releasing* is misplaced. *See* No. 06-1511, 2007 WL

674708 (D.N.J. Feb. 23, 2007). That case simply applied existing Third Circuit authority in the copyright realm to hold that the federal copyright statute did preempt the plaintiff's claim of misappropriation by unfair competition. *Id.* at *3-4. Thus, the case does not provide support for the proposition that misappropriating a patent or the legal language contained therein is actionable. *See id.* Similarly, *Scibetta v. Slingo, Inc.*, does not support Telebrands's position. *See* No. 16-8175, 2018 WL 466224 (D.N.J. Jan. 17, 2018). *Scibetta* does not address whether a valid cause of action exists under New Jersey law for misappropriation of a patent; the *Scibetta* court denied the motion to dismiss based on the moving party's burden and the deficiencies in both parties' briefing. *See id.* at *18.

Moreover, the Court is unaware of any recognized cause of action under New Jersey's unfair competition case law that mirrors the factual allegations of Count XI. As Plaintiffs point out, Telebrands does not discuss the required elements of any misappropriation claim under New Jersey law which might be applicable to Count XI. (*See* D.E. No. 116-1).

For these reasons, the Court dismisses Count XI for failure to state a recognized independent cause of action. *See, e.g.*, *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 755 (D.N.J. 2016) (dismissing an unjust enrichment claim because such a claim is not a recognized independent cause of action in California).

The Court also dismisses Telebrands's counterclaim for being preempted by federal patent law as currently pleaded. To this point, the Court finds the *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.* highly analogous. *See* 204 F.3d 1368 (Fed. Cir. 2000). In that case, the alleged infringer asserted counterclaims under the New Jersey Racketeer Influenced and Corrupt Organizations ("RICO") law, alleging numerous qualifying predicate acts under the statute. *Id.* at 1381. But the underlying factual allegations boiled down to one misdeed: the

patentee filing a false statement with the USPTO. *Id.* at 1382. In holding the counterclaim preempted as applied by the alleged infringer, the Federal Circuit reasoned:

> As pleaded by [the alleged infringer], its New Jersey RICO counterclaims occupy a field identical in scope with the inequitable conduct defense. If the conduct constituting inequitable conduct, without more, could be considered predicate acts under federal or state RICO law, then every accused infringer asserting an inequitable conduct defense would also bring such a RICO counterclaim. An additional state cause of action predicated so squarely on the acts of inequitable conduct would be "contrary to Congress' preemptive regulation in the area of patent law."

*Id.* (quoting *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1357 (Fed. Cir. 1991)). The Federal Circuit then rejected the alleged infringer's argument that its New Jersey RICO counterclaim was not preempted because the counterclaim "allege[d] additional elements not found in the federal patent law cause of action for inequitable conduct . . . ." *Id.* The alleged infringer had "ignore[d] the distinction between acts that *may* be proven as part of a state RICO violation and those which *must* be proven for liability." *Id.* And as pleaded by the alleged infringer, the acts constituting the necessary elements for the New Jersey RICO claim completely overlapped with the acts constituting the alleged infringer's inequitable conduct defense. *Id.*

Here, the Court cannot ascertain a meaningful distinction between Telebrands's inequitable conduct counterclaim and its counterclaim for misappropriation of intellectual property. (*Compare* Counterclaims ¶¶ 149-65, *with id.* ¶¶ 206-16). Like the New Jersey RICO counterclaim in *Semiconductor Energy Lab.*, Telebrands's counterclaim for misappropriation of intellectual property appears to be "an additional state cause of action predicated . . . squarely on the acts of inequitable conduct"—i.e., the alleged misconduct of Frost Brown, Gary Dean Ragner, and Robert Daniel deRochemont, Jr., before the USPTO in obtaining the '076 and '944 patents. *See* 204 F.3d at 1382. Telebrands argues that that patent law does not preempt its counterclaim because the

counterclaim "contains the additional element of direct competition." (D.E. No. 126 at 8). In other words, "[t]he crux of Count XI . . . . is that [Plaintiffs] *misappropriated* Telebrands' intellectual property and *used it in direct competition* with Telebrands." (*Id.* at 9). But this argument is unavailing because, like the alleged infringer in *Semiconductor Energy Lab.*, Telebrands "conveniently ignores the distinction between acts that *may* be proven as part of a state [cause of action] and those which *must* be proven . . . ." *See* 204 F.3d at 1382. Telebrands only argues that its counterclaim for misappropriation of intellectual property "*contains the additional element* of direct competition." (*See* D.E. No. 127 at 7 (emphasis added)). Telebrands does not argue that the element of direct competition is a *necessary* element of a "misappropriation of intellectual property" cause of action. (*See id.*). Nor can it, as Telebrands does not identify an actual legal test, under a recognized New Jersey unfair competition law, for comparison. (*See id.*).

The Court grants Plaintiffs' motion to dismiss, but grants Telebrands **one, final chance** to amend Count XI of its counterclaims.

## IV. Conclusion

In summary, for the reasons above, the Court DENIES Telebrands's and Bulbhead's motions to dismiss (D.E. Nos. 113 & 120), and GRANTS Plaintiffs' motion to dismiss (D.E. No. 116).

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
