UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAGNER TECHNOLOGY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TELEBRANDS CORPORATION,<br><br>Defendant. | Civil Action No. 15-8185 (EP) (MAH)<br><br>OPINION |

**HAMMER, United States Magistrate Judge**

**I.   INTRODUCTION**

This matter comes before the Court by way of Tristar Products, Inc.'s ("Tristar") motion for leave to file a second amended complaint to add claims of fraud and tortious interference. Mot. to Am., May 9, 2025, D.E. 341. Telebrands Corporation ("Telebrands") opposes this motion. Br. in Opp., May 19, 2025, D.E. 344. The Court has considered each party's filings in support of, and in opposition to, the motion. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decides this motion without oral argument. For the reasons set forth below, the Court denies Tristar's motion to amend the Second Amended Complaint to add fraud and tortious interference claims.

## II. BACKGROUND

This matter is one of several cases involving a series of disputes and lawsuits between the parties, spanning several years and multiple jurisdictions. Until recently, it was one of five consolidated actions between the parties.[1]

Ragner Technology Corporation ("RTC") asserts ownership over a series of patents, 7,549,448 ("the '448 patent"), 9,022,076 ("the '0760 patent"), 9,182,057 ("the '057 patent"), and 9,371,944 ("the '944 patent") (collectively, "the patents-in-suit"), related to expandable hose technology. Civ. No. 15-8185, D.E. 185, at 2; *see also* Fourth Am. Compl. in Civ. No. 13-7752, Jul. 6, 2018, D.E. 197, ¶¶ 1, 13, 14; First Am. Compl. in Civ. No. 15-3163, Jan. 19, 2016, D.E. 23, ¶ 1; Compl. in Civ. No. 15-8185, Jul. 6, 2018, D.E. 106, ¶¶ 1-2, 7; Second Am. Compl. in Civ. No. 16-3474, Apr. 29, 2019, D.E. 164, ¶ 1; Compl. in Civ No. 16-3594, June 21, 2016, D.E. 1, ¶ 1. Tristar claims to be the exclusive licensee of the patents-in-suit, selling expandable hoses using the RTC patents' technology under the brand "FLEX-ABLE HOSES." Civ. No. 15-8185, D.E. 185, at 2. However, Telebrands asserts that it is the exclusive licensee of a patent related to expandable hose technology, selling expandable hoses under the brand "POCKET HOSE." Civ. No. 15-8185, D.E. 322, at 2; *see also* Civ. No. 16-3474, D.E. 180, at 2.

---

[1] These consolidated actions consisted of: (i) *Tristar Products, Inc. et al. v. National Express, Inc. et al.*, Civil Action No. 13-7752; (ii) *Telebrands Corp. v. Ragner Technology Corp. et al.*, Civil Action No. 15-3163; (iii) *Ragner Technology Corp. et al. v. Telebrands Corp.*, Civil Action No. 15-8185; (iv) *Telebrands Corp. v. Ragner Technology Corp. et al.*, Civil Action No. 16-3594; and (v) *Telebrands Corp. v. Ragner Technology Corp. et al.*, Civil Action No. 16-3474. On April 21, 2016, the Court consolidated Civ. No. 13-7752, Civ. No. 15-3163, and Civ. No. 15-8185. Civ. No. 13-7752, D.E. 121 at 1-2. On August 17, 2017, Civ. No. 16-3474 and Civ. No. 16-3594 were consolidated into Civ. No. 13-7752, as the lead case, for all pre-trial and discovery purposes. Civ. No. No. 13-7752 Order, Aug. 17, 2017, D.E. 152. Of the original five cases, only Civ. No. 15-8185 and Civ. No. 16-3474 remain. Civ. No. 15-8185, D.E. 322, at 1.

On August 26, 2015, RTC and Tristar brought the instant action against Telebrands and certain retailers for infringement of the '448 patent.[2]  Civ. No. 15-8185, Compl., D.E. 1.  On July 6, 2018, RTC and Tristar amended their Complaint, removing the retailers as Defendants but adding Bulbhead.com, LLC. ("Bulbhead").  First Am. Compl., D.E. 106.  RTC and Tristar added infringement of the '076, '057, and '944 patents patent infringement claims, as well as claims for false advertising and unfair competition under the Lanham Act, unfair competition under New Jersey state law, tortious interference with prospective business advantage, and common law unfair competition.  *Id.*  On April 15, 2019, Bulbhead filed an Answer to RTC and Tristar's First Amended Complaint, along with Counterclaims seeking a declaratory judgment that it had not infringed the patents-in-suit and that they were invalid and unenforceable.  Answer and Countercls., D.E. 182.  On April 29, 2029, Telebrands filed an Amended Answer to the First Amended Complaint along with Amended Counterclaims similarly seeking a declaratory judgment but also seeking injunctive relief.  Am. Answer and Am. Countercls., D.E. 187.

After many years of litigation between the parties, on February 6, 2024, in a status report to the Court, Telebrands represented to this Court that it was the rightful owner of the RTC patents.[3]  Civ. No. 13-7752, D.E. 433, at 2.  Specifically, Telebrands contended that RTC

---

[2] On June 15, 2016, Telebrands filed a declaratory judgment action against RTC and Tristar seeking a judgment that its product does not infringe the '448, '076, and '057 patents, and that the patents are invalid and unenforceable.  Civ. No. 16-3474, Compl. D.E. 1.  On May 23, 2018, Tristar and RTC filed Answers with Counterclaims against Telebrands and Bulbhead.  Answers with Countercls., D.E.s 59, 60.  On April 15, 2019, Telebrands filed Amended Answers to Tristar's and RTC's Counterclaims and Bulbhead filed Answers to Tristar's and RTC's Counterclaims.  D.E.s 156-159.

[3] On July 17, 2023, in other litigation involving these parties pending in Camden at that time, Telebrands told the Court that it had obtained "all of the rights necessary to continue this action from the co-inventor Mr. Ragner."  *Blue Gentian v. Tristar Products*, Civ. No. 13-1758, D.E. 587.  On August 15, 2023, Tristar responded that "[s]ince Tristar maintains that it is the exclusive licensee of the [RTC] patent portfolio, this statement has blindsided it."  *Id.*, D.E. 588.  On September 20, 2023, Tristar sought from Telebrands any and all agreements that would

3

assigned ownership of the patents-in-suit to Telebrands under certain agreements (the "Agreements"). Civ. No. 13-7752, D.E. 440, at 4. Telebrands also informed the Court that it had filed proposed amendments to the Ex Parte Reexamination proceedings pending in the U.S. Patent & Trademark Office ("PTO") seeking to cancel the asserted RTC patents.[4] Civ. No. 13-7752, D.E. 433, at 2-3. As a result of the Agreements, Telebrands claimed that because it was now the true patent owner, Tristar had standing issues with respect to its patent infringement claims. *Id.* In response, Tristar sought to discover the Agreements, claiming that Telebrands should not be allowed to make a secret deal with RTC to reassign ownership of the patents and then subsequently use those Agreements to "dispose of a number of the claims against [itself.]" Civ. No. 13-7752, D.E. 440, at 1. On June 3, 2024, this Court found that the Agreements were discoverable and fundamentally relevant to the litigation's patent infringement, tortious interference, and unfair competition claims. Civ. No. 15-8185, Tr. of June 3, 2024 Conf., D.E. 306, at 9:22-10:25.

On May 22, 2024, Tristar filed a ten-count complaint in the Northern District of Florida (the "Florida Action") against Telebrands, its counsel, Jeffrey L. Snow, and Whele LLC d/b/a/

---

demonstrate the veracity of Telebrands's statement that it had obtained all rights. *Id.*, D.E. 622-1.

[4] Between April 17 and 22, 2024, the PTO issued *ex parte* reexamination certificates cancelling all of the asserted claims of the patents-in-suit in the consolidated actions. Civ. No. 15-8185, D.E. 317, at 3. As a result, on December 10, 2024, this Court issued a Report and Recommendation ("R&R") which recommended the District Court dismiss all claims and counterclaims in cases Civil Actions 13-7752, 15-3163, and 16-3594; as well as counts I-IV and counterclaims IXI in 15-8185 and counts I-XI and counterclaims I-IV in 16-3473. Civ. No. 15-8185, D.E. 320, at 2. On January 15, 2025, the District Court adopted the R&R and dismissed all patent infringement related claims and counterclaims with prejudice. Civ. No. 15-8185, D.E. 320, at 2. The remaining disputed claims in this action are claims of: false advertising and unfair competition in violation of the Lanham Act, 15, U.S.C. § 1125(a); unfair competition in violation of N.J.S.A. § 56:4-1 *et seq.*; tortious interference with prospective business advantage; and common law unfair competition. Civ. No. 15-8185, D.E. 322, at 4; *see also* Civ. No. 15-8185, D.E. 321, at 2.

Perch (the "Florida Defendants"). Ltr., D.E. 336-2, at 12. The aforementioned Agreements form the basis of the claims brought in the Florida Action. In particular, Tristar maintained that Telebrands enter into these Agreements with RTC as part of a scheme with the other Florida Defendants to deprive Tristar of their rights to license the patents-in-suit and then wrongfully have the patents canceled. *Tristar Products, Inc. v. Telebrands Corp.*, No. 24-238, 2025 WL 1111513, at *1-4 (N.D. Fl. Apr. 14, 2025). Tristar asserted claims against the Florida Defendants for tortious interference, fraud, civil RICO, antitrust, and conspiracy. *Id.*, at *4. On April 14, 2025, the District Judge in the Florida Action, the Honorable M. Casey Rodgers, dismissed each of Tristar's ten causes of action, some with and some without prejudice. *Id*. at *23. Judge Rodgers dismissed Tristar's fraud and tortious interference claims without prejudice. *Id.* Instead of amending its fraud and tortious interference claims in accordance with Judge Rodgers's Order, on April 24, 2025, Tristar filed a notice of voluntary dismissal of the Florida Action. Br. in Opp., D.E. 344, at 3; Declaration of Jeffrey L. Snow ("Snow Decl."), D.E. 344-3, Ex. B, Notice of Voluntary Dismissal.

Thereafter, on May 9, 2025, Tristar moved to file a Second Amended Complaint in this Court to assert tortious interference and fraud claims.[5] Mot. to Am. Compl., May 9, 2025, D.E. 341. Tristar argues that this Court should allow it to add claims for fraud and tortious interference because: (1) discovery confirms that Telebrands entered into negotiations with RTC before the termination of Tristar's exclusive license; (2) Telebrands understood that the Telebrands-RTC agreement was subject to Tristar's surviving license rights; (3) Telebrands and RTC agreed that the RTC-Telebrands Agreement would not alter their positions in the consolidated cases, i.e., RTC and Tristar retained the right to pursue their existing patent

---

[5] On May 18, 2025, RTC filed a letter stating that it does not join in the motion to amend or the proposed allegations of fraud and tortious interference. Ltr., D.E. 343.

infringement claims; and (4) Telebrands knowingly misrepresented the scope of its patent rights to the PTO and RTC.  Mem. in Supp., May 9, 2025, D.E. 342, at 4.

In opposition, Telebrands asserts that Tristar fails to demonstrate "good cause" under Federal Rule of Civil Procedure 16(b)(4) to permit for Tristar's untimely motion to amend.  Br. in Opp., D.E. 344, at 4.  Telebrands argues that Tristar's delay in filing the motion was due to Tristar's lack of diligence.  *Id*.  Telebrands further contends that this Court should deny the motion under Rule 15, based on undue delay, bad faith, unfair prejudice, and futility.  *Id.* at 7.  Additionally, Telebrands maintains that Judge Rodgers already found Tristar's fraud claim to be futile.  *Id.* at 16.  Telebrands argues that it was the rightful assignee of the patents when it made representations to the PTO.  *Id.* at 4.  Telebrands denies that it improperly canceled any patent claims and casts Tristar's allegations as only misleading attempts to unfairly influence this Court in its ongoing litigation.  *Id.* at 13.

In reply, Tristar argues that good cause exists under Rule 16 because it acted diligently and in good faith, raising concerns with this Court as soon as Telebrands made disputed ownership claims in the Blue Gentian action and only sought to amend after receiving key documents that Telebrands withheld.  Reply, May 27, 2025, D.E. 347, at 1-3.  Specifically, the recently produced Agreements reveal that Telebrands knowingly misrepresented the scope of its patent rights and engaged in misconduct both before and after the termination of Tristar's license.  *Id.* at 5-6.  Tristar contends there is no unfair prejudice because the new claims are closely related to the existing litigation, discovery remains open, the Court has not set a trial date, and Telebrands has been on notice of the claims since at least February 2024.  *Id.* at 4-5.  Tristar emphasizes that it did not act in bad faith or with a dilatory motive.  *Id.* at 5-6.

6

### III. DISCUSSION

#### A. Tristar's Motion to Amend the Amended Complaint

##### 1. Rule 16

The Third Circuit has adopted a liberal approach to amending pleadings, ensuring that claims are decided on their merits rather than on technicalities. *Dole v. Acro Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Under Federal Rule of Civil Procedure 15(a)(2), the court should freely give leave to amend the Complaint when justice so requires. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (citing Fed. R. Civ. P. 15(a)(2)). However, if a motion to amend is untimely, Federal Rule of Civil Procedure 16(b)(4) requires a party to make a showing of "good cause" for modifying the scheduling order before the Court can address the merits of a motion to amend under Rule 15. *See Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Federal Rule of Civil Procedure 16(b)(3)(A) requires courts to issue a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." A motion to amend filed after the Court's Rule 16(b)(3)(A) deadline is subject to a heightened level of scrutiny. *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014).

"A determination of 'good cause' under Rule 16 depends on the diligence of the moving party." *Korrow*, 300 F.R.D. at 220 (citing *GlobespanVirata, Inc. v. Texas Instruments Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005)). Good cause requires a showing that, despite the movant's attentiveness, "the deadlines set forth in the scheduling order could not reasonably be met." *Id.*; *see also Harrison Beverage Co. v. Dribeck Imps.*, 133 F.R.D. 463, 469 (D.N.J. 1990). "[G]ood cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might

understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (alteration in original) (quoting *Phillips v. Greben*, No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)). "[C]ourts typically examine whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the amended motion before the deadline had expired." *Id.*

The Pretrial Scheduling Order set a May 30, 2018 deadline to file any motion to amend the pleadings. Pretrial Scheduling Order, D.E. 86, ¶ 28; *see also* Order, D.E. 94. The Court did not amend that deadline, nor did any party ask the Court to do so. Tristar filed the instant motion on May 9, 2025, almost seven years after the deadline in the Pretrial Scheduling Order. Mot. to Am. Compl., May 9, 2025, D.E. 341. Therefore, the Court must assess whether good cause exists under Rule 16 to now allow Tristar to amend its Amended Complaint.

Telebrands contends that Tristar cannot demonstrate good cause under Rule 16 because Tristar has failed to show due diligence in filing its motion significantly after the applicable deadline. Br. in Opp., May 19, 2025, D.E. 344, at 4. On the other hand, Tristar argues that it promptly pursued "legal recourse to vindicate its rights," demonstrating its diligence in the matter. Mem. in Supp., D.E. 342, at 6. This Court has reviewed the record and the parties' arguments to determine whether good cause exists under Rule 16 to permit this late amendment and concludes that Tristar has not exercised sufficient diligence in filing its motion to amend.

In February 2024, Tristar first raised with this Court potential claims of fraud and tortious interference. Tr. of Feb. 14, 2024 Conf., D.E. 296, at 31:9-32:5. During the February 14, 2024 conference with the parties, this Court acknowledged the protracted nature of the litigation and expressed concern about further delay. *Id.* at 38:8-39:13. But it also indicated that it would

8

permit Tristar to make its motion to amend at the appropriate time. *Id.* at 39:14-15. However, Tristar initially chose not to bring this motion here. Instead, on May 22, 2024, Tristar filed a new action against Telebrands and others for claims of fraud and tortious interference in the Northern District of Florida. Only once Tristar received an adverse ruling in that court on April 14, 2025, did it seek to amend this matter to include those claims of fraud and tortious interference. *See Tristar Products, Inc. v. Telebrands Corp., Whele LLC*, No. 24-238, 2025 WL 1111513, at *19-20, 22 (N.D. Fl. Apr. 14, 2025) (dismissing both Tristar's fraud and tortious interference claims). Only then did Tristar attempt to raise its fraud and tortious interference claims before this Court. *See* Mem. in Supp., D.E. 342, at 11. The facts before this Court and this timeline undermine Tristar's claim that it acted promptly in seeking leave to amend its Amended Complaint.

      Although Tristar had previously "raised its concerns about Telebrands' potential tortious interference and the fraudulent nature of both Telebrands' purported obtainment of the Asserted Patent rights and its cancelation of the claims[,]" it opted to initiate a separate action in Florida only after this Court expressed skepticism about adding further claims to an already complex case. *Id*. at 10. It was not until Tristar received an unfavorable ruling in Florida, and more than fifteen months after it first raised the possibility of asserting these claims, that it filed the instant motion to amend. *See id*. at 7. The Court cannot credit Tristar's assertion of diligence given that it chose to bring the fraud and tortious interference claims in a new forum, with uncertain jurisdiction, rather than seeking to do so here, where litigation between the parties had been ongoing for more than a decade.

      Tristar argues that the Northern District of Florida was a proper venue for its initial filing of tortious interference and fraud claims, asserting that it is "where Telebrands and RTC are

9

located and to which defendants' wrongful acts were directed." *Id.* at 11. Tristar offers this sole justification for filing in Florida rather than in this District, where the Consolidated Cases were already pending, and personal jurisdiction was undisputed. However, Tristar's contention is inconsistent with its proposed pleading. Tristar's Proposed Second Amended Complaint directly contradicts this claim, as it expressly states that Telebrands is both incorporated and headquartered in New Jersey, not Florida.[6] Prop. Sec. Am. Compl., D.E. 342-1, ¶ 8. Given this inconsistency, the Court cannot view Tristar's choice to file in Florida as a product of reasonable diligence.

To further support its claim of diligence, Tristar argues it could not assert tortious interference and fraud claims earlier because Telebrands failed to produce necessary documents during discovery. *Id*. Thus, Tristar contends it was unaware of the alleged wrongdoing until shortly before it "promptly" filed the new action in Florida. *Id.* The Court finds this argument unavailing for two reasons. First, Tristar improperly relies on the need for discovery to plead its claims. However, discovery is not a tool to search for information or evidence to draft a pleading or claim. *See Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL

---

[6] The Court is unpersuaded by Tristar's claim that concerns over personal jurisdiction in New Jersey justified filing in Florida. As noted, Tristar concedes that Telebrands is a New Jersey corporation headquartered in New Jersey. Prop. Sec. Am. Compl., D.E. 342-1, ¶ 8; *see also* Br. in Opp., May 19, 2025, D.E. 344, at 6 n.5 ("Tristar knew it had personal jurisdiction over Telebrands in New Jersey, as exemplified by this long-running litigation; it simply desired to bring suit in *Tristar's* home forum of the Northern District of Florida."). Bulbhead, the other Defendant named in the Second Amended Complaint, has been a named Defendant in this litigation since at least July 6, 2018, when Tristar and RTC filed the First Amended Complaint naming Bulbhead as an additional Defendant in this litigation. *See* First Am. Compl., D.E. 106; Prop. Sec. Am. Compl., D.E. 342-1, at ¶ 9. Thus, Tristar's purported "sensitivity" to personal jurisdiction in New Jersey lacks merit, and does not support Tristar's argument that it acted promptly in filing the claims. That Tristar named Telebrands's counsel, Jeffrey L. Snow, and Whele LLC d/b/a/ Perch as additional defendants in the Florida Action does not change this Court's conclusion as Judge Rodgers dismissed the entirety of Tristar's Complaint largely based on lack of personal jurisdiction. *See Tristar Products, Inc.*, 2025 WL 1111513 at *23.

2885887, at *5 (D.N.J. July 23, 2008) (quoting *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)). Rather, the purpose of discovery is to "uncover evidence of the facts pleaded in the Complaint[.]" *Id.* (quoting *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 204 (3d Cir. 2006)); *see also Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 12-2981, 2013 WL 6858956, at *2 (D.N.J. Dec. 23, 2013) ("[T]he sole purpose of discovery is to add flesh for trial on the parties' respective claims and defenses in the given action. Discovery is not a fishing expedition for potential claims or defenses."). There was no requirement that Tristar obtain the subject Agreements before pleading its new claims. Indeed, Tristar was aware of the Agreements and sought them during the February 14, 2024 conference. Thus, Tristar cannot excuse its delay by citing a lack of evidence prior to discovery. Second, Tristar admits that it became aware of Telebrands' alleged misconduct between July 2023 and January 2024, yet it did not initiate any legal action, here or elsewhere, until May 2024. *See* Mem. in Supp., May 9, 2025, D.E. 342, at 7. These delays undermine any claim of diligence.

Accordingly, the Court concludes that Tristar has not demonstrated good cause under Rule 16 to modify the Pretrial Scheduling Order or amend its Complaint, as the record and applicable case law do not adequately support its arguments regarding diligence.

### 2. Rule 15

Because the Court has determined that Tristar has not satisfied the good cause standard under Rule 16, it need not reach Rule 15. *See E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *Watson v. Sunrise Senior Living Servs., Inc.*, Civ. No. 10-230, 2015 WL 1268190, at *10 (D.N.J. Mar. 18, 2015). But in the interest of completeness, the Court considers the instant motion under that standard as well. "Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when

justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.,* 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15 (a)(2)).  The Court may deny a motion to amend the pleadings only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

### a. Undue Delay and Unfair Prejudice

Much of the analysis for undue delay under Rule 15 naturally overlaps with the good-cause analysis under Rule 16.  But the standards are distinct, and hence the Court separately considers the undue delay element of Rule 15.

"The concepts of undue delay and unfair prejudice are often interrelated in the context of a Rule 15 analysis, and the Court will consider them together."  *Spiderplow, Inc. v. Site Energy*, No. 16-2318, 2017 WL 11477633, at *3 (D.N.J. Feb. 8, 2017).  A party's delay, by itself, is insufficient to justify the denial of leave to amend.  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  "However, 'at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.'"  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  The inquiry into undue delay includes consideration of the court's "[i]nterests in judicial economy and finality," as well as a "focus on the movant's reasons for not amending sooner." *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004).

Further, it is well-established that "[p]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978); *see also Johnson v. New Jersey*, No. 18-11299, 2023 WL 3952985, at *4 (D.N.J. June 12, 2023) (quoting *Cureton*, 252 F.3d at 273) (stating the court's focus is specifically "on the hardship to the defendants if the amendment were permitted"). In assessing prejudice, courts consider whether the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Long*, 393 F.3d at 400.

Tristar contends that there was no undue delay in filing its claims, explaining that it first sought discovery related to Telebrands' alleged assignment and raised concerns about potential new claims with this Court before proceeding. Mem. in Supp., May 9, 2025, D.E. 342, at 12. Tristar argues that it brought its claims in the Northern District of Florida in a timely manner. *Id*. According to Tristar, this Court's reluctance to entertain new claims in a long-standing case, as well as concerns about establishing "personal jurisdiction over all three defendants in New Jersey," guided Tristar's decision to file in Florida. *Id*. The first point does not provide a valid basis for filing the claims elsewhere, as this Court never indicated that Tristar could not raise the claims here. On the contrary, the Court made clear that leave to amend would be granted, if appropriate. Tr. of Feb. 14, 2024 Conf., D.E. 296, at 39:14-15; *see also Juul Labs, Inc. v. 4X PODS*, No. 18-1544, 2020 WL 2029327, at *3 (D.N.J. Apr. 28 2020) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.").

The undue delay element of Rule 15 compels denial of the motion for the same reasons as expressed in the Rule 16 analysis.  Tristar made its request to add claims of fraud and tortious interference almost ten years after it initially filed this matter.  *See Wiley v. City of Newark*, No. 16-2530, 2022 WL 3013075, at *5 (D.N.J. July 29, 2022) (finding undue delay where the plaintiff sought leave six years following the initial filing).  Furthermore, not only did Tristar raise these claims at a very late stage in the litigation, but the deadline set by this Court for filing a motion to amend expired nearly seven years ago.  Pretrial Scheduling Order, D.E. 86, ¶ 28; *see also* Order, D.E. 94.  But, most importantly for the undue delay analysis is that Tristar knew since at least as early as February 2024 that it likely would be seeking leave to amend yet did not do so here until May 9, 2025, despite having already been cautioned about the age of this litigation.  Under no circumstances can the Court conclude that this constitutes anything other than undue delay.

Moreover, adding new fraud and tortious interference claims at this juncture of this decade-old litigation would inevitably delay this resolution of this litigation as the new claims will require entirely new written discovery and depositions.  This litigation has witnessed myriad discovery disputes and motions that have required repeated Court intervention.  The Court must allow for the strong possibility that new discovery disputes would accompany the new discovery, and further protract this litigation.  It is true the "mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. National Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001).  However, it is not only the passage of time that justifies denying the motion, but the excessive delay the proposed amendments would cause in finally resolving this aged litigation.

14

The proposed amendment would also impose a significant and unwarranted burden on both the Court and Telebrands, making its allowance untenable. Tristar contends that Telebrands would not suffer any prejudice from the addition of these claims, as discovery in the underlying action remains ongoing and Telebrands has been on notice of the potential for such claims since February 2024. Reply, May 27, 2025, D.E. 347, at 4. But the Court remains unconvinced. Tristar's assertion ignores the reality that the proposed amendments would require substantial additional discovery and the other tasks the amendment would require.

For example, in the Florida Action, Judge Rodgers found that Tristar's Complaint did not "allege[] sufficient facts to plausibly state a claim for tortious interference." *Tristar Prods., Inc.*, 2025 WL 1111513, at *19. But Judge Rodgers did not stop there. She explained what facts Tristar would need to to allege to state a claim for tortious interference. *Id.* *20 n.40. To wit, "[i]f Tristar plausibly alleged *facts* evincing that (i) Telebrands had negotiated with RTC prior to its decision to terminate the exclusive licensing arrangement with Tristar; and (ii) Telebrands' represented to RTC—during the course of those pre-termination negotiations—that RTC's right to recover or pursue its existing patent infringement claims would be unaffected by an assignment of its patent rights to Telebrands, that would likely be sufficient to state a plausible claim for tortious interference." *Id.* Judge Rodgers's findings underscore the significant discovery that would be necessary to establish a viable foundation for Tristar's tortious interference claims. The suggestion that this would not burden or prejudice Telebrands, merely because it anticipated the possibility of such claims, is not persuasive. Therefore, the Court is constrained to find that permitting the proposed amendments will result in unfair prejudice to Telebrands.

15

Thus, to allow amendment to include two new claims at this juncture would multiply the proceedings, protract discovery, and unduly cause Defendants to incur considerable costs. It also would "render[] the complaint a 'moving target'." *Ramirez-Rodriguez v. W. New York Bd. of Educ.*, No. 18-17081, 2022 WL 2158965, at *3 (D.N.J. June 15, 2022) (finding a complaint is a moving target where a party attempts to bring new claims more than two years after the expiration of the deadline to amend, after three years of discovery, and when a Final Pretrial Conference was already scheduled); *see also Berk v. Ritz Carlton Condo. Ass'n*, No. 19-20666, 2021 WL 2651252 at *4 (D.N.J. Nov. 12, 2021) (stating that courts have "rightly rejected" a "moving target" approach to amendments; "wait and see tactics amount to undue delay and would prejudice the defendants").

Accordingly, the Court concludes that it is appropriate to deny Tristar's motion under a Rule 15 analysis because Tristar unduly delayed in seeking leave to amend and permitting the amendment would cause unfair prejudice to Telebrands.[7]

### IV. CONCLUSION

For the reasons set forth herein, Tristar's motion to amend the Second Amended Complaint, Mot. to Am. Compl., May 9, 2025, D.E. 341, is denied. An Order consistent with this Opinion will issue.

*s/ Michael A. Hammer*
UNITED STATES MAGISTRATE JUDGE

**Dated: September 2, 2025**

---

[7] Because the Court is denying the motion for leave to amend based on unfair prejudice and undue delay, it need not reach the issues of futility or dilatory motive.